UNITED STATES of America, Appellant,

v.

DAVID CALHOUN.

No. 13–1901.

United States Court of Appeals, Third Circuit.

Argued Nov. 18, 2014.

Opinion Filed Jan. 29, 2015.

Joel D. Goldstein, Esq., Robert A. Zauzmer, Esq. [ARGUED], Office of United States Attorney, Philadelphia, PA, for Appellant.

Ellen C. Brotman, Esq. [ARGUED], Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for Appellee.

OPINION *

SCIRICA, Circuit Judge.

The United States appeals the District Court's order granting David Calhoun a

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not

new trial due to ineffective assistance of counsel. Because we find Calhoun was not prejudiced under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we will reverse and remand.[1]

## I.

### A.

A jury convicted Calhoun of conspiracy to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 846, and possession with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1). Calhoun was sentenced to 20 years' imprisonment, followed by 10 years' supervised release, and ordered to pay a $200 special assessment. Calhoun appealed and we affirmed the judgment of conviction and sentence, *United States v. Calhoun,* 276 Fed.Appx. 114, 120 (3d Cir.2008), and denied Calhoun's petition for rehearing en banc. The Supreme Court denied review. Calhoun filed a pro se motion for a new trial under Federal Rule of Criminal Procedure 33 and a motion for relief under 28 U.S.C. § 2255. The District Court found that Calhoun's trial counsel was ineffective in failing to object to Calhoun's being viewed in shackles by members of the jury at preliminary jury selection. The court vacated Calhoun's conviction and sentence and ordered a new trial. The government appealed.

### B.

Against the advice of his experienced counsel, Calhoun chose to attend preliminary jury selection. Preliminary jury selection precedes *voir dire* and involves the process of randomly selecting potential jurors from a pool of individuals summoned to the courthouse to produce a jury panel. Unlike *voir dire,* at which the jury is selected from the jury panel in the presence of the trial judge, preliminary jury selection occurs in a jury assembly room outside the courtroom. Because the jury assembly room is a large public area with several exits, bringing a custodial criminal defendant to this area poses a security risk. As a result, the United States Marshal Service requires prisoners attending preliminary jury selection to be accompanied by several deputy U.S. Marshals and "restrained with leg irons, a waist chain, and handcuffs." Consequently, Calhoun attended preliminary jury selection in shackles. All of the jurors for Calhoun's trial were drawn from the jury pool at the preliminary jury selection Calhoun attended in shackles. Following preliminary jury selection, Calhoun requested that his trial counsel, William T. Cannon, an experienced criminal defense lawyer, object to his appearing shackled in front of the jury pool. Believing there was "zero chance" the trial judge would grant this motion, counsel chose not to object.

At trial, the government produced ample evidence to convict Calhoun of conspiracy to distribute more than five kilograms of cocaine and possession with intent to distribute more than 500 grams of cocaine. The evidence established a scheme in which Raul Estevez acquired cocaine from Pedro Risquet and in turn sold it to Calhoun. When Calhoun wished to purchase cocaine, he would call Estevez, who would then call Risquet and arrange for transport of the cocaine from Risquet to Estevez.

constitute binding precedent.

1. "We review the District Court's decision *de novo* because both the performance and prejudice prongs of ineffective assistance of counsel claims present mixed questions of law and fact." *United States v. Cross,* 308 F.3d 308, 314 (3d Cir.2002).

Estevez would pay Risquet approximately $25,000 per kilogram, and then resell it to Calhoun for approximately $26,000. Estevez was the government's key witness at trial.

The government presented telephone conversations recorded from December 11, 2004, through February 3, 2005, between Risquet and Estevez and between Estevez and Calhoun. In these recorded conversations, Risquet, Estevez, and Calhoun set up cocaine deliveries using coded language. On the basis of these conversations, surveillance was established at Estevez's Philadelphia residence. On January 2, 2005, following Calhoun's pickup of an arranged delivery from Risquet to Estevez, officers approached Calhoun, who dropped the bag he was carrying. The bag contained approximately one kilogram of cocaine. Calhoun then consented to a search of his residence, where officers found additional cocaine and $203,000. Calhoun subsequently provided a statement that identified Estevez as his cocaine supplier, admitted to the monthly purchase of about a kilogram of cocaine from Estevez over a seven-month period, an admission Estevez corroborated at trial, and stated that he owed Estevez $1,300. The government then provided Calhoun with $1,300 and outfitted him with a concealed recording device. Calhoun paid Estevez the $1,300 and set up an additional transaction that mirrored their prior dealings. On the basis of the conversations between Calhoun, Estevez, and another cooperating party, the DEA executed a search warrant at Estevez's residence and seized two kilograms of cocaine.

## II.

Because the evidence of guilt presented at trial was ample, if not overwhelming, we find Calhoun was not prejudiced under *Strickland* because there is no reasonable probability he would have been acquitted but for his being shackled in front of the jury pool.

## A.

Ineffective assistance of counsel claims are governed by the Supreme Court's test in *Strickland v. Washington*. Under *Strickland*, the defendant carries the burden of demonstrating (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." 466 U.S. at 687, 104 S.Ct. 2052. Though *Strickland*'s ineffectiveness inquiry contains both a performance and prejudice component, the Court has made clear that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697, 104 S.Ct. 2052. Accordingly, our analysis is limited to the prejudice prong of *Strickland*.

To establish prejudice under *Strickland*, the defendant must prove that but for counsel's error, there is a reasonable probability the outcome of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052. A reasonable probability exists where the probability is "sufficient to undermine confidence in the outcome." *Id.*

It is well settled that courts applying *Strickland*'s prejudice test must consider the strength of the evidence against the defendant. *E.g., id.* at 695, 104 S.Ct. 2052; *Albrecht v. Horn*, 485 F.3d 103, 128–29 (3d Cir.2007); *Buehl v. Vaughn*, 166 F.3d 163, 172 (3d Cir.1999). Without considering the strength of the evidence against the defendant, a court cannot determine whether there was a reasonable probability of a different result. *Buehl*, 166 F.3d at 172. The greater the support a verdict has in the record, the less likely it is to have been affected by errors. *Strickland*, 466 U.S. at 696, 104 S.Ct. 2052. Where

the magnitude of the evidence against the defendant is such that he cannot show he was deprived of a reliable trial result, prejudice under *Strickland* is not met. *Id.* at 696, 104 S.Ct. 2052 ("In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable...."); *Albrecht,* 485 F.3d at 128–29 (finding no prejudice from counsel's failure to request limiting instruction where there was "ample if not overwhelming evidence of [the defendant's] guilt"); *Buehl,* 166 F.3d at 172 (finding the defendant could not show the absence of a limiting instruction deprived him of a fair trial "[i]n view of the magnitude of the evidence").

## B.

In this case, the strength of the evidence against Calhoun must be considered against counsel's failure to object to his shackling before the jury pool at preliminary jury selection. The shackling of the defendant before the jury is an extraordinary measure that should not occur absent a trial court determination that shackles are justified by a state interest specific to the particular trial. *Deck v. Missouri,* 544 U.S. 622, 629, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005). Shackling is heavily disfavored because it (1) undermines the presumption of innocence; (2) can interfere with a defendant's ability to communicate with his lawyer and prepare his own defense; and (3) is an affront to the dignity and decorum of the judicial process.[2] *Id.* at 630–32, 125 S.Ct. 2007. In particular, shackling adversely affects the fairness of the fact-finding process and "the jury's perception of the character of the defendant." *Id.* at 633, 125 S.Ct. 2007.

## C.

Calhoun contends that the prejudice prong of *Strickland* is satisfied by a showing that the shackling issue would have been determined differently had counsel objected. But, within the context of this case, this is not the different "result of the proceeding" *Strickland* calls for. *See United States v. Lilly,* 536 F.3d 190, 196 (3d Cir.2008) (rejecting defendant's argument that the relevant prejudice inquiry was "whether he would have opted for a jury trial over a bench trial had his counsel adequately informed him of this constitutional right" and asserting that the proper focus is on the actual *outcome* of the proceeding itself); *see also Breakiron v. Horn,* 642 F.3d 126, 146–47 (3d Cir.2011) (finding that where a juror was exposed to sworn testimony that the defendant "used to do a lot of robbing[,]" the proper inquiry under *Strickland* was not whether expo-

---

**2.** Calhoun claims that even though he brought his claim as one for ineffective assistance of counsel, he could have stated a direct claim that his due process rights were violated by the shackling procedure. On a direct due process claim, the government would bear the burden of showing "beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained." *Deck,* 544 U.S. at 635, 125 S.Ct. 2007. But by failing to make the due process claim on direct appeal, Calhoun defaulted it. *See Hodge v. United States,* 554 F.3d 372, 379 (3d Cir.2009) ("[A] movant has procedurally defaulted all claims that he neglected to raise on direct appeal."). Accordingly, it was not available to him in his 2255 motion. A defendant can only overcome such default by showing cause and prejudice. *Bousley v. United States,* 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Even if Calhoun were to assert that his failure to raise the due process claim on direct appeal was due to ineffective assistance of counsel, that would return us to the same posture as this appeal. As the District Court correctly noted, "because Calhoun raises his argument as an ineffective assistance of counsel claim, a finding of prejudice is required."

sure actually rendered the juror biased or partial, but instead whether "a juror who had not been exposed to that statement would have voted to acquit" the defendant).

In support of his argument, Calhoun relies on *Lafler v. Cooper*, — U.S. —, 132 S.Ct. 1376, 1388, 182 L.Ed.2d 398 (2012) (stating that in that case "the question [was] not the fairness or reliability of the trial but the fairness and reliability of the process that preceded it"). But *Lafler* involved the defendant's rejection of a plea offer and decision to go to trial. *Id.* at 1385. Because the plea process was separate from trial, and if the plea was accepted there would have been an entirely different result than that ensuing after a guilty verdict at trial, the Court rejected the argument that the defendant suffered prejudice only if the resulting trial did not produce a fair result. *See id.* at 1385–86. But, unlike in *Lafler*, the question here *is* the fairness or reliability of Calhoun's trial—whether his shackling before the jury pool is sufficient to undermine confidence in the outcome of his trial. As such, *Lafler* does not apply and the proper prejudice inquiry is whether there is a reasonable probability that Calhoun would have been acquitted but for his appearance before the jury pool in shackles.

## III.

In determining that *Strickland*'s prejudice prong was met and a new trial was required, the District Court focused on the effect of the jury's first impression of Calhoun in shackles and the taint of this impression on the evidence presented to the jury. The District Court found Calhoun's shackling at preliminary jury selection to have "infected the entire proceed-

ings which followed." Because we find the outcome of Calhoun's trial to be reliable in view of the magnitude of the evidence against him, we disagree with the trial court's finding of prejudice.

There is no reasonable probability that Calhoun would have been acquitted of conspiracy to distribute more than five kilograms of cocaine or possession with intent to distribute more than 500 grams of cocaine had he not appeared shackled before the jury pool. The record evidence against Calhoun was clear and uncontradicted. Calhoun was in possession of approximately one kilogram of cocaine, valued at approximately $25,000, when he was apprehended. The government presented recorded conversations between Calhoun, Estevez, and Risquet that took place in coded language and established the mechanics of the conspiracy. Calhoun identified Estevez as his cocaine supplier and admitted to purchasing the kilogram found in his possession from Estevez. He admitted to purchasing about a kilogram of cocaine from Estevez monthly for a seven-month period, and Estevez corroborated this account at trial. Calhoun consented to a search of his residence, where more cocaine and $203,000 in cash was found. He admitted he owed Estevez a balance of $1,300 for the kilogram of cocaine found in his possession.[3] In addition, Calhoun was later surveilled making the $1,300 payment to Estevez and setting up a new transaction that confirmed the workings of their prior dealings.

As noted, there was ample, if not overwhelming, evidence of possession with intent to distribute, and the same is true of conspiracy considering the length of Calhoun's affiliation with Estevez, the amount

---

**3.** Being provided drugs on credit is strong evidence of a conspiracy. *United States v.*

*Iglesias,* 535 F.3d 150, 155 (3d Cir.2008).

of drugs purchased, and the standardized nature of their transactions. *See United States v. Gibbs,* 190 F.3d 188, 199 (3d Cir.1999). Given the magnitude of the evidence presented at trial, there is no reasonable probability that Calhoun would have been acquitted but for his shackling in front of the jury pool. Accordingly, we find no prejudice under *Strickland.*

## IV.

For the foregoing reasons, we will reverse the order granting David Calhoun a new trial due to ineffective assistance of counsel and remand to the District Court for consideration of Calhoun's pending motions mooted by the grant of a new trial.