

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-1-2008

# USA v. Calhoun

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3794

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Calhoun" (2008). *2008 Decisions.* Paper 1283.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1283

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-3794

UNITED STATES OF AMERICA,

v.

DAVID CALHOUN,

<u>Appellant</u>

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 05-cr-00363-6)
District Judge: Hon. Marvin Katz

No. 06-3842

UNITED STATES OF AMERICA,

v.

PEDRO RISQUET,

<u>Appellant</u>

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 05-cr-00363-4)
District Judge: Hon. Marvin Katz

BEFORE: SMITH, HARDIMAN and COWEN, <u>Circuit Judges</u>

(Filed:  May 1, 2008)

OPINION

COWEN, <u>Circuit Judge</u>.

Defendants-Appellants David Calhoun and Pedro Risquet were convicted by a jury of a number of narcotics charges, including, *inter alia*, conspiracy to distribute more than five kilograms of cocaine.  They were each sentenced to a 20-year term of imprisonment and 10 years of supervised release.  Each has appealed.

The District Court had jurisdiction under 18 U.S.C. § 3231.  Calhoun's appeal was timely filed, but Risquet's was not.  <u>See</u> Fed. R. App. P. 4(b)(1)(A).  However, because the Government does not object on timeliness grounds, we will consider Risquet's appeal on the merits.  <u>See</u> <u>Eberhart v. United States</u>, 546 U.S. 12, 13 (2005) (per curiam) (Federal Rule of Criminal Procedure 33's seven-day limit for filing new trial motions is not jurisdictional and may be waived); <u>United States v. Frias</u>, __ F.3d ___, 2008 WL 833973, *4 (2d Cir. Mar. 31, 2008) (Fed. R. App. P. 4(b)'s deadline is not jurisdictional, but is "mandatory and inflexible" when timeliness bar is properly invoked by the government); <u>United States v. Mitchell</u>, 518 F.3d 740, 744 (10th Cir. 2008) (same); <u>but cf.</u>

2

DL Resources, Inc. v. FirstEnergy Solutions Corp., 506 F.3d 209, 214 n.3 (3d Cir. 2007) (noting open question on issue).  We exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Calhoun asserts claims of sufficiency of the evidence, trial court error, and prosecutorial misconduct.  Additionally, Risquet alleges trial court error and a violation of his Sixth Amendment rights.  We address each claim in turn.

Calhoun contends that he had nothing more than a mere buyer-seller relationship with Raul Estevez[1], and thus there is insufficient evidence to support his conspiracy conviction.  The standard of review on a sufficiency of the evidence claim is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).  While an isolated purchase or sale of drugs, without more, is insufficient to sustain a conviction for conspiracy, "even an occasional ... buyer for redistribution[] can be shown to be a member of the conspiracy by evidence, direct or inferential, of knowledge that she or he was part of a larger operation."  United States v. Price, 13 F.3d 711, 728 (3d Cir. 1994).  In determining whether this requisite knowledge exists, a factfinder may consider factors such as: "the length of affiliation between the defendant and the conspiracy; whether

---

[1]  Estevez is a co-defendant in the case, but pled guilty and testified for the Government against Calhoun and Risquet.

3

there is an established method of payment; the extent to which transactions are standardized; and whether there is a demonstrated level of mutual trust." United States v. Gibbs, 190 F.3d 188, 199 (3d Cir. 1999).

The evidence presented at trial indicated that in the six months preceding his arrest, Calhoun purchased cocaine from Estevez on a monthly basis, in one-kilogram quantities, for approximately $26,000 per kilogram. See id. ("[a] large transaction or an accumulation of deals suggests more trust ... as well as a greater likelihood" that the parties were engaged in common enterprise). The exchanges were always arranged beforehand through coded phone conversations, and always took place at Estevez's residence. Calhoun's inquiries of "the boy from New York,"[2] and that he recognized Risquet on sight before they both entered Estevez's residence, where Calhoun obtained a kilogram of cocaine, all support the inference that Calhoun was aware of Risquet's role as Estevez's supplier. Furthermore, the evidence showed that on at least one occasion, Calhoun obtained drugs on credit – paying Estevez a portion of the purchase price up front and the balance at a later time. See id. at 200 ("[a] credit relationship ... often evidences the parties' mutual stake in each other's transactions"); United States v. Carbone, 798 F.2d 21, 27 (1st Cir. 1986) ("[t]he conspiracy began when the cocaine was sold on credit and continued until final payment was made"). Accordingly, there was ample evidence upon which the jury could have concluded beyond a reasonable doubt

---

[2] Risquet lived Union City, New Jersey, just a few miles outside of New York.

4

that Calhoun was engaged in a conspiracy to distribute narcotics.

There is similarly no merit to Calhoun's argument that the District Court erred when it denied his request for a continuance of trial. We review such denials for abuse of discretion. United States v. Olfano, 503 F.3d 240, 245 (3d Cir. 2007). Denying a continuance request is an abuse of discretion "only when it is so arbitrary as to violate due process." United States v. Khorozian, 333 F.3d 498, 507 (3d Cir. 2003); see also Gov't of V.I. v. Charleswell, 115 F.3d 171, 174 (3d Cir. 1997) ("[t]he matter of a continuance is traditionally within the discretion of the trial judge who must be given wide latitude in arranging the court's schedule").

Here, two weeks prior to trial, Calhoun filed a *pro se* continuance motion, alleging that he and his counsel did not have adequate time to prepare a defense because they were unable to meet. However, the Government contended in its opposition that contrary to this claim, Calhoun and counsel had met on several occasions in the weeks before trial, and no physical illness or other impediment prevented Calhoun from doing so. Calhoun did not proffer anything to contradict these representations, and while his counsel did, at Calhoun's request, renew the *pro se* continuance motion at the start of trial, counsel did not join in the motion nor express any concerns about inadequate preparation. On this record, the District Court's denial was not an abuse of discretion, nor did it violate Calhoun's due process or Sixth Amendment rights. Cf. United States v. Faison, 679 F.2d 292, 297 (3d Cir. 1982) (where important government witness's illness prevented his live

5

cross-examination, trial court abused its discretion in refusing to continue the trial for a reasonable period to allow the witness to recover); United States v. Santos, 201 F.3d 953, 958-59 (7th Cir. 2000) (denial of *unopposed* continuance was abuse of discretion where postponement was sought because defense counsel had a scheduling conflict; denial implicated right to choice of counsel as counsel was then forced to withdraw).

Next, Calhoun and Risquet both claim that the District Court erred in (1) denying their acquittal motions in the presence of the jury, and (2) in leaving the bench during trial. Risquet further contends that the Court's above actions, coupled with its allegedly improper remarks pertaining to the flow of the trial constituted structural error. We review a trial court's decisions pertaining to trial management for abuse of discretion. Reed v. Phila., Bethlehem & New England R.R. Co., 939 F.2d 128, 133 (3d Cir. 1991) (district courts are "entrusted with wide discretion" in "matters of trial procedure"). On the other hand, the question of whether a judge's absence from the bench arises to a constitutional structural error is reviewed *de novo*. United States v. Mortimer, 161 F.3d 240, 241 (3d Cir. 1998). However, because none of these claims, with the exception of the one alleged absence objected to by Calhoun, were raised below, we review only for plain error. United States v. Olano, 507 U.S. 725, 732 (1993).

Calhoun and Risquet argue that the District Court erred when it denied their respective Rule 29 motions for judgments of acquittal without first excusing the jury. While it may be better practice to entertain such legal matters outside the presence of the

6

jury, United States v. Coke, 339 F.2d 183, 186-87 (2d Cir. 1974), no plain error resulted here from the failure to do so. Where all that the jury heard was that Defendants' "29" motions were denied, neither Calhoun nor Risquet were prejudiced because jurors would not have known that the motions pertained to the judge's perception of the sufficiency of the prosecution's evidence, and could not have been unduly swayed as a result. Cf. United States v. Diharce-Estrada, 526 F.2d 637, 640-41 (5th Cir. 1976) (cumulative effect of commencing the hurried jury trial at 7:30pm, denying a "motion for acquittal" in open court, and prosecutorial misconduct warranted reversal); Coke, 339 F.2d at 185-86 (judge's "excessive interference in the examination of witnesses, [] repeated rebukes and disparaging remarks directed at [defense] counsel," and denial of "motion for a judgment of acquittal" in front of the jury violated defendant's due process rights).

Nor does the District Judge's alleged absence warrant reversal. Where a judge is, without explanation and without the consent of the parties, physically absent during a "critical stage" of trial, a structural error occurs and prejudice is presumed. Mortimer, 161 F.3d at 242 (prosecutor objected during defense's summation but withdrew objection upon observing that judge was not in the courtroom). However, not every judicial absence arises to an error of constitutional dimension. E.g., United States v. Burke, 345 F.3d 416, 425 (6th Cir. 2003) (affirming conviction obtained where judge presided over portion of proceedings via video-conference); United States v. Grant, 52 F.3d 448, 449 (2d Cir. 1995) (while absence is not favored, it was not error for judge to leave courtroom

7

while testimony was read back to jury as "[t]here [was] nothing for the judge to rule on").

In this case, during his counsel's cross-examination of Estevez, Calhoun objected that the District Judge was not on the bench. However, the record indicates that the trial judge responded immediately that he was in fact present in the courtroom. See Calhoun's Supp. App., at 8 ("Mr. Calhoun: I object ... The Judge is not on the bench. The Court: Yes, I am."). Therefore, no structural error occurred since it appears that the District Judge was merely outside of Calhoun's view, was not actually absent from the proceedings, and certainly did not "completely abdicate[] his judicial responsibilities." United States v. Kone, 307 F.3d 430, 443 (6th Cir. 2002) (no structural error where trial judge had another judge preside telephonically over jury deliberations, verdict, and polling); cf. Riley v. Deeds, 56 F.3d 1117, 1120 (9th Cir. 1995) (reversal warranted where judge was nowhere to be found during jury deliberations; that law clerk presided and granted the jury's read-back request demonstrated a "complete absence of judicial discretion" sufficient to constitute structural error).

Similarly, Risquet merely alleges that the District Judge left the bench and sat outside of the view of the jury and the parties a few times during the course of trial, not that the Judge was physically absent. Indeed, Risquet expressly concedes that the Judge was present in the courtroom at all times. Because his failure to object below means there is no record of when the absences occurred, and because he fails, even on appeal, to elaborate upon the circumstances surrounding the alleged absences, Risquet has simply

8

failed to demonstrate any prejudice resulting from the complained-of conduct.  See

United States v. Love, 134 F.3d 595, 605 (4ᵗʰ Cir. 1998) (no plain error where judge was

in chambers during portions of the closing argument but remained "available to exercise

his discretion with respect to objections made by either side"); Kone, 307 F.3d at 443

(affirming conviction where defendant did not establish that he was prejudiced from

judge's physical absence from courthouse).

Furthermore, there was no error, plain or otherwise, in the District Court's remarks

prodding counsel to proceed faster at various points in the trial.[3]  Initially, since five of

the seven statements identified as inappropriate by Risquet on appeal were actually

directed *at the Government*, we fail to understand, nor has Risquet explained, how any

such remarks could have prejudiced *the defense*.  Furthermore, there is nothing improper

in either of the two remarks that were made to Calhoun's counsel: "[You may continue

only] [i]f it is terribly important.  We have to have some limits"; and "may I ask how

much more [] you have."  Risquet's Opening Brief, at 6 (citing App. at 58, 67).  Such

comments do not come close to demonstrating judicial bias, and they certainly did not

deprive Risquet of his right to a fair trial.  See, e.g., United States v. Carson, 455 F.3d

336, 358 (D.C. Cir. 2006) (judge's comments that defense objections were "frivolous"

---

[3]  Among the comments characterized by Risquet as inappropriate include, *inter alia*: "We have to economize the time of the jury, counsel.  We have to get right down to the essentials and skip the rest"; "Counsel, get down to the meat of it and no formalities"; and "This is trivia.  Get to the rest of the story ... We can't proceed at this pace, it is almost impossible."  Risquet's Opening Brief, at 6 (citing App. at 54, 44, 55-56).

and its evidence was "irrelevant" "did not reach a level of hostility that prevented a fair trial"); see also United States v. Donato, 99 F.3d 426, 434 (D.C. Cir. 1996) ("a district judge has wide discretion in monitoring the flow of a criminal trial").

Additionally, Calhoun claims the prosecutor impermissibly vouched for Estevez's credibility during summation. To prevail on this claim, Calhoun must demonstrate: (1) the prosecutor assured the jury that Estevez's testimony is credible; and (2) the assurance was based on the prosecutor's personal knowledge or on other information not found in the trial record. United States v. Walker, 155 F.3d 180, 187 (3d Cir. 1998). We review here only for plain error.

The prosecutor's statements that the terms of Estevez's plea agreement required his full and truthful cooperation did not constitute vouching. The agreement was a part of the Government's evidence at trial, and the prosecutor's references to its terms were therefore permissible argument. Id. (no vouching occurs "where a prosecutor argues that a witness is being truthful based on the testimony given at trial"). Furthermore, the prosecutor did not err in saying to the jury: "I suggest to you that Estevez's testimony rang true. You are to decide." Calhoun's Supp. App., at 11; see Walker, 155 F.3d at 188 (a phrase like "I submit to you" is "merely a method of prefacing an argument and does not by itself constitute vouching ... it ... does not *assure* the jury that the witness is credible, but instead *asks* the jury to find that the witness was credible") (emphasis in original). Moreover, the Government's summation did not reference information

10

contained outside the trial record, and the Court duly instructed the jury that they were the sole judges of credibility. Viewed in the context of the entirety of the proceedings, the challenged statements were not erroneous; even if they were, they were not sufficiently "serious as to undermine the fundamental fairness of the trial and to contribute to a miscarriage of justice" so as to warrant reversal. United States v. Pungitore, 910 F.2d 1084, 1126 (3d Cir. 1990) (internal quotations omitted); see also United States v. Beaty, 722 F.2d 1090, 1097 (3d Cir. 1983) (even where prosecutor's statement that cooperators "promised to tell the truth and were telling the truth" constituted vouching, no prejudice resulted since the cooperators' credibility "was a hotly contested issue" at trial and thus the jury was more likely to view the statement as argument).

Finally, Risquet contends that the District Court violated his Sixth Amendment right at sentencing when it relied on his criminal history in determining that he was subject to a 20-year mandatory minimum. This argument is clearly foreclosed by Almendarez-Torres v. United States, 523 U.S. 224 (1998), which remains valid and binding precedent. United States v. Vargas, 477 F.3d 94, 104 (3d Cir. 2007).

In conclusion, finding the claims of error to be without merit, we affirm the judgments of the District Court.

11