*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

## UNITED STATES
Appellant

**v.**

## Tayron D. DAVIS, Specialist
United States Army, Appellee

**No. 24-0152**
Crim. App. No. 20220272

Argued October 9, 2024—Decided February 13, 2025

Military Judges: Charles L. Pritchard Jr. (arraignment) and Thomas P. Hynes (trial)

For Appellant: *Captain Stewart A. Miller* (argued); *Colonel Christopher B. Burgess, Major Chase C. Cleveland*, and *Major Timothy R. Emmons* (on brief); *Colonel Richard E. Gorini* and *Major Justin L. Talley*.

For Appellee: *Major Bryan A. Osterhage* (argued); *Jonathan F. Potter*, Esq. (on brief).

Chief Judge OHLSON delivered the opinion of the Court, in which Judge MAGGS and Judge HARDY joined. Judge SPARKS filed a separate opinion, concurring in part and dissenting in part, in which Judge JOHNSON joined.

————————

Chief Judge OHLSON delivered the opinion of the Court.[1]

Before trial, the Chief Circuit Military Judge of the United States Army's 5th Judicial Circuit stepped aside[2] as the presiding judge in Appellee's court-martial and detailed as his replacement the only other military judge in the circuit. These facts, on their face, appear routine. However, unusual circumstances surrounding this incident—which are detailed later in this opinion—prompted the United States Army Court of Criminal Appeals (ACCA) to hold that the Chief Circuit Military Judge's action of either removing or recusing himself resulted in his disqualification from Appellee's case and that his subsequent act of detailing the other military judge in his stead was therefore ultra vires. Moreover, the ACCA opined that the Chief Circuit Military Judge took these steps in order to orchestrate a particular result in this case that was against Appellee's interests, and the lower court also determined that the successor military judge was biased against Appellee. The ACCA went on to hold that the Chief Circuit Military Judge's conduct resulted in structural error, and then held in the alternative that even if there was no structural error here, reversal was still warranted under the third prong of the test from *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988). The ACCA concluded that under either analytical approach the only proper remedy was to dismiss the case with prejudice. As can be seen then, this case was anything *but* routine.

---

[1] The Court heard oral argument in this case at Naval Station Norfolk, Virginia, as part of the Court's "Project Outreach." Project Outreach seeks to expand awareness of the military justice appellate process by taking appellate hearings to military bases and educational institutions around the country. We thank the participants.

[2] As shall be seen, the precise nature of the Chief Circuit Military Judge's action is of central importance to the disposition of this case.

Upon issuance of the ACCA's decision, the Judge Advocate General of the Army (TJAG) certified two issues for review in this Court—whether the ACCA erred in finding structural error and, if so, whether the ACCA also erred in alternatively holding that Appellee was prejudiced and that dismissal with prejudice was the appropriate remedy. For the reasons that follow, we answer both of these certified issues in the affirmative and reverse the judgment of the ACCA.

## I. Background

Appellee was a specialist (E-4) in the United States Army assigned to the 554th Military Police Company at the U.S. Army Garrison in Stuttgart, Germany. On the evening of November 24, 2020, Appellee sexually assaulted Sergeant (SGT) LT on two occasions at her home. The convening authority referred three offenses against Appellee: one attempted sexual assault specification and two sexual assault specifications, in violation of Articles 80 and 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 920 (2018). Colonel (COL) Charles Pritchard, the Chief Circuit Judge of the Army's 5th Judicial Circuit, was the docketing judge for this circuit, and he initially detailed himself to Appellee's case. On February 14, 2022, Judge Pritchard arraigned Appellee.

One month prior to Appellee's arraignment, Judge Pritchard issued rulings in two unrelated cases, *United States v. Dial* and *United States. v. Ferreira*. In both cases, Judge Pritchard ruled that a military accused has a constitutional right to a unanimous verdict if he is to be found guilty. In order to prevent Judge Pritchard from proceeding in this manner, the Government petitioned the ACCA for writs of prohibition in *Dial* and *Ferreira*, and the ACCA then stayed the proceedings in each case.

Judge Pritchard subsequently decided that he would not "rule on any further unanimous verdict motions until the Army Court issued an opinion on the [unanimous guilty verdict] issue." In an affidavit to the ACCA that he filed in

the course of the current litigation, Judge Pritchard explained his reasoning:

- "[I]t was likely the defense would continue to file [unanimous guilty verdict] motions in all future cases regardless of the presiding judge."

- The government likely would not provide any additional authorities to support its position on this issue in any future case, and thus Judge Pritchard's future rulings would likely be the same.

- This state of affairs would result in additional stays of proceedings which "would last around six months" and would "essentially shut down at least half of the courts-martial in Europe and the Middle East [i.e., in the Army's 5th Judicial Circuit] for lengthy periods of time."

- Such delays "would be inconsistent with military justice."

Judge Pritchard also clarified that his decision not to preside over trials with panel members "was not [an] attempt[] to arrange a particular result (i.e., a denial of the unanimous verdict motion), because [he] could not be certain how other military judges would rule." Further, he did not tell any other military judge how to rule "either expressly or impliedly." He decided to "only detail [himself] to or remain detailed on bench trials and to move other cases toward trial." His actions in this latter capacity would be confined to "handl[ing] arraignments and any motions for which the parties needed rulings significantly before trial in order to properly prepare (e.g., compel experts, compel discovery, compel witnesses, etc.) and to defer other motions, including unanimous verdict motions, to the trial judge for resolution."

On April 4, 2022—which was after the ACCA stayed the proceedings in *Dial* and *Ferreira* but before it ruled on the

Government's writs[3]—Judge Pritchard emailed Lieutenant Colonel Thomas Hynes, the only other military judge in the circuit. Judge Pritchard stated that he would "take [Judge Hynes] up on [his] offer to take" Appellee's case, but that "[i]f [the] ACCA issues a [unanimous verdict] opinion in the meantime, [he] may take it back (or not)." This reassignment occurred the day of the deadline for filing motions but before Appellee filed his unanimous verdict motion although the defense appears to have previously placed Judge Pritchard on notice that it intended to file a unanimous verdict motion.

In his initial affidavit to the ACCA, Judge Hynes stated that he had been "asked to be detailed to *U.S. v. Davis*" and explained:

> In an earlier discussion with [Judge Pritchard] we talked about the *U.S. v. Dial* ruling and the potential for a case backlog in the 5th Circuit related to the automatic stay provision in R.C.M. 908(b)(4) while *U.S. v. Dial* was pending appeal. I asked to take *U.S. v. Davis* to *do my part to mitigate any potential case backlog* while *U.S. v. Dial* was pending appeal.

(Emphasis added.) In his affidavit, Judge Pritchard recounted that he did not indicate to Judge Hynes that "he should rule on any motion in any particular manner," and he "did not discuss [with Judge Hynes] the unanimous verdict issue in relation to [Appellee's] case." However, after Judge Pritchard's *Dial* and *Ferreira* rulings, he had a phone conversation with Judge Hynes "about the issues involved in a unanimous verdict motion he was adjudicating in another case." In this conversation:

> I told him he should not be swayed, one way or the other, by the fact that I was his supervisor or by how I had ruled in other cases on that issue and

---

[3] These writs were resolved in favor of the government in June 2022. *United States v. Pritchard*, 82 M.J. 686, 689 (A. Ct. Crim. App. 2022); *United States v. Ferreira*, No. ARMY MISC 20220034 (A. Ct. Crim. App. June 24, 2022) (unpublished) (order).

that he should make an independent determination based on his analysis of the law.[4]

A supplemental affidavit submitted by Judge Hynes stated that the "do my part" language from his prior affidavit had been "unfairly twisted by appellate counsel to suggest a 'nefarious' motive." He explained that these words "refer[red] only to my desire to take any available cases in my circuit that my chief trial judge did not want to take, for whatever reasons he did not want to take them" and "was not in reference to *U.S. v. Davis* or any other case specifically; I would have been happy to take any case(s)." Judge Hynes further stated that "[e]very case I have been detailed to has been without any conditions of any kind" and that "[o]nce reassigned, the *Davis* case was my responsibility and mine alone."

On April 4, 2022, the same day that Judge Pritchard detailed Judge Hynes to the case, Appellee filed a motion for a unanimous verdict. Judge Hynes announced his appearance on the record during an April 11, 2022, Article 39(a), UCMJ,[5] session, stating that he had been "detailed to this court-martial by" Judge Pritchard. The parties did not question or challenge his appearance. In this session, Judge Hynes orally denied the Appellee's unanimous verdict motion and then followed it up with a written ruling. In his supplemental affidavit, Judge Hynes stated that his denial of Appellee's motion for a unanimous verdict "speak[s] for" itself.

Appellee requested to be tried by Judge Hynes alone on May 23, 2022, after initially requesting trial by a panel with enlisted members. It was not until this point that

---

[4] There is a notation in the record indicating that Judge Hynes denied a unanimous verdict motion in a different case on March 8, 2022. However, there is no indication Judge Pritchard knew about this ruling. His affidavit states, "My recollection is that [Judge Hynes] did not tell me how he was going to rule in that case. We did not have another conversation about the unanimous verdict issue."

[5] 10 U.S.C. § 839(a) (2018).

Judge Hynes assembled the court-martial. Appellee then entered pleas of not guilty to all charges and specifications. In an affidavit filed with the ACCA, Appellee stated:

> Had I become aware that Judge Pritchard was being replaced as the military judge in my court-martial to avoid ruling on my unanimous verdict motion, and that Judge Hynes was being detailed who would "do [his] part," I would not have requested a judge alone trial with Judge Hynes. I would have also asked Judge Hynes to be recused.

(Alteration in original.)

Judge Hynes acquitted Appellee of the Article 80 attempt offense and convicted him of the two Article 120 offenses. At sentencing, he rejected the Government's proposed sentence of twenty-four months of confinement for each specification, to be served concurrently, among other penalties. Instead, he imposed Appellee's requested sentence—a dishonorable discharge and 120 days of confinement for each specification to be served concurrently. The convening authority took no action with respect to the findings and sentence, and the military judge subsequently entered the judgment of the court.

Appellee assigned the following error to the ACCA: "Whether the judicial reassignment of [Appellee's] case warrants reversal of the conviction." A unanimous ACCA set aside the findings and sentence and dismissed the charges with prejudice. *United States v. Davis*, No. ARMY 20220272, 2024 CCA LEXIS 144, at *18, 2024 WL 1652642, at *8 (A. Ct. Crim. App. Mar. 27, 2024) (unpublished).

At the outset of its decision, the ACCA found that reassignment of the case by Judge Pritchard to Judge Hynes was "structural error mandating reversal, because the improper conduct of both trial judges 'affected the framework within which the trial proceed[ed.]'" *Id.* at *15, 2024 WL 1652642, at *6 (alteration in original). The lower court explained that with his removal, "Judge Pritchard was disqualified from taking any further action regardless of his stated reason," rendering his act of detailing Judge

Hynes "ultra vires." *Id.* at \*13, 2024 WL 1652642, at \*6. The ACCA further stated that Judge Pritchard's reassignment decision was unlawful because "it was in pursuit of a particular result on an anticipated issue in the case." *Id.*, 2024 WL 1652642, at \*6.

As for Judge Hynes, the ACCA interpreted his first affidavit's "do my part" language as "a predetermined intent to deny a likely" unanimous verdict motion. *Id.*, 2024 WL 1652642, at \*6. The ACCA also faulted both Judge Hynes and Judge Pritchard for failing to disclose to the parties "out-of-court events bearing upon [their] actions and the issue of judicial impartiality."[6] *Id.* at \*14, 2024 WL 1652642, at \*6 (alteration in original) (internal quotation marks omitted) (quoting *United States v. Quintanilla*, 56 M.J. 37, 77 (C.A.A.F. 2001)). According to the ACCA, "[t]his sub rosa episode violated the 5th Amendment's Due Process clause" and resulted in "structural error mandating reversal." *Id.* at \*15, 2024 WL 1652642, at \*6.

The ACCA next determined that even if there was no structural error, Appellee still satisfied the plain error standard of review because Judge Pritchard "clearly erred in detailing the case to Judge Hynes after he made the decision to 'remove' himself" and "[t]he government ha[d] not disproven prejudice to [Appellee] beyond a reasonable doubt." *Id.* at \*12, \*15 n.10, 2024 WL 1652642, at \*5, \*6 n.10. Additionally, the ACCA determined that reversal of the findings and sentence was warranted "under [*United States v. Roach*, 69 M.J. 17, 20 (C.A.A.F. 2010)] and the

---

[6] On April 13, 2022, assistant trial defense counsel in Appellee's case sent an email to Judge Pritchard requesting an interview "to address how judges are detailed in cases in the circuit," and he copied counsel in "cases where the detailed judge was changed." The following day, Judge Pritchard stated that "[c]onsistent with [Rule for Courts-Martial (R.C.M.)] 505(e)(1), I do not intend to discuss my pre-assembly detailing decisions." (This rule provides that before assembly "the military judge . . . may be changed by an authority competent to detail the military judge . . . , without cause shown on the record." R.C.M. 505(e)(1) (2019 ed.).)

third prong of the *Liljeberg* test: the risk of undermining the public's confidence in the judicial process." *Id.* at *15-17, 2024 WL 1652642, at *6-7. Finally, the ACCA dismissed the case with prejudice because of the "irregularities . . . at the trial level" and the circumstances of Judge Hynes's supplemental affidavit. *Id.* at *17-18, 2024 WL 1652642, at *7.

TJAG then filed a certificate for review of the following two issues:

> I. Whether the Army Court erred in finding the reassignment of [Appellee's] case resulted in structural error.
>
> II. Whether the Army Court erred in finding the reassignment of [Appellee's] case resulted in prejudice and thus dismissing the case with prejudice.

*United States v. Davis*, 84 M.J. 462, 462-63 (C.A.A.F. 2024) (certificate for review). We address each issue in turn.

## II. Certified Issue I: Structural Error

### A. Standard of Review

In regard to the first certified issue, we apply a de novo standard of review when deciding the legal question of whether there was structural error in a given court-martial. *United States v. Paul*, 73 M.J. 274, 277 (C.A.A.F. 2014) ("This Court reviews questions of law de novo."); *see also United States v. Calhoun*, 276 F. App'x 114, 117 (3d Cir. 2008) ("the question of whether a judge's absence from the bench arises to a constitutional structural error is reviewed *de novo*"). In making this structural error determination, we examine the conduct and the rulings of the two trial military judges involved in this case rather than the reasoning contained in the ACCA's opinion.

### B. Discussion

### 1. Judge Pritchard's Reassignment Decision

A preliminary question we need to decide is whether Judge Pritchard's act of detailing Judge Hynes to this case—after Judge Pritchard had initially detailed himself

and presided over Appellee's arraignment—constituted a reassignment, a removal, a recusal, or a disqualification.[7] The reason why such a distinction needs to be drawn is because different rules and case law may apply depending on the characterization of the action.

For a number of reasons, we conclude that Judge Pritchard's actions in this case should be construed as a reassignment. To begin with, Judge Pritchard viewed his action as a reassignment and acted in accordance with his belief; Judge Pritchard, as the Circuit Chief Judge, had the authority to reassign the case in this manner; Judge Pritchard had routinely reassigned cases to Judge Hynes in the past; and Judge Hynes viewed Judge Pritchard's detailing action as a reassignment and proceeded accordingly.

Next, we note that there is no evidence in the record that Judge Pritchard was removed from this case by the Chief Trial Judge of the Army or by any other authority.[8]

And finally, we are not persuaded by Appellee's argument that Judge Pritchard's impartiality could reasonably be questioned and that he therefore was automatically recused/disqualified from this case. Appellee first avers that Judge Pritchard's refusal to disclose the reasons for the reassignment demonstrates that "he knew what he was doing was unjust." Brief for Appellee at 10, *United States v. Davis*, No. 24-0152 (C.A.A.F. July 15, 2024). Although it is true that Judge Pritchard declined to explain his "pre-assembly detailing decision[]," R.C.M.

---

[7] "The terms 'disqualification' and 'recusal' are closely related. Whereas disqualification refers to the basis for a judge not to be able to sit on a case, 'recusal' refers to the judge's refusing to sit on grounds of disqualification." *United States v. Witt*, 75 M.J. 380, 384 n.12 (C.A.A.F. 2016).

[8] The Chief Trial Judge of the Army informed Appellee's counsel, "COL Pritchard was not removed from . . . *Davis* . . . , nor am I aware of any case that COL Pritchard has ever been removed from in the nine years that he has been a military judge."

505(e)(1) (2019 ed.) states in pertinent part: "Before the court-martial is assembled, the military judge . . . may be changed . . . *without cause shown in the record.*" (Emphasis added.)[9]

Moreover, we now know Judge Pritchard's rationale for reassigning the case; from his perspective, he was merely seeking to improve the efficiency of his judicial circuit. This benign intent—no matter how misguided—does not serve as a sufficient basis for a reasonable person knowing all of the relevant facts to question Judge Pritchard's impartiality in regard to Appellee and his case. *See* R.C.M. 902(a) (2019 ed.).

This conclusion is reinforced by the fact that "[t]here is a strong presumption that a judge is impartial, and a party seeking to demonstrate bias must overcome a high hurdle." *Quintanilla*, 56 M.J. at 44. Here, there is insufficient evidence in the record that would serve to rebut this presumption, such as persuasive material indicating that Judge Pritchard was biased *against* Appellee or biased *towards* the Government. Although, as will be seen, we disagree with Judge Pritchard's key decision here, the record also does not support the contention that he was seeking to obtain a particular result in this case, including the unanimous verdict motion. For example, Judge Pritchard stated in his affidavit—and there is nothing in the record that contradicts this assertion—that he did not know how Judge Hynes would rule in regard to a unanimous verdict motion, and that he did not state or

---

[9] It is important not to read too much into the words "without cause shown in the record." R.C.M. 505(e)(1) (2019 ed.). This provision presumes that the reason for the reassignment is proper; it does not excuse or place beyond the reach of legal review a reassignment of a case for an improper motive or reason. *United States v. Smith*, 3 M.J. 490, 492 n.5 (C.M.A. 1975) (This Court "in no way condones the replacement of a military judge prior to assembly for improper motives."); *United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir. 1989) ("Judges may reassign cases for almost any reason, provided that the assignment is not for an impermissible reason.").

imply how he wanted Judge Hynes to decide this matter.[10] Thus, there is no basis to conclude that Judge Pritchard was disqualified from this case.

Appellee similarly provides us with no convincing reason to conclude that Judge Pritchard sought to, needed to, or did recuse himself. As the ACCA itself noted, Judge Pritchard's rationale for reassigning this case to Judge Hynes—his concern that future appellate stays in cases where unanimous verdict motions were granted would negatively affect his circuit's docket—"does not seem to fit neatly into any of the categories recognized under R.C.M. 902." *Davis*, 2024 CCA LEXIS 144, at \*12, 2024 WL 1652642, at \*5. Indeed, as noted above, the record indicates that Judge Pritchard merely saw himself as a logistical impediment to the timely disposition of Appellee's case, a concern that does not rise to the level of prejudice or a conflict of interest that is typically inherent to a recusal mandate.

Nevertheless, the ACCA concluded that "once he took himself off" Appellee's case, "under R.C.M. 902 Judge Pritchard was disqualified from taking any further action." *Id.*, 2024 WL 1652642, at \*5. We disagree. Part of the role of a chief circuit judge is to detail military judges to cases, including those instances where a different military judge initially had been detailed to serve. *See* Dep't of the Army, Reg. 27-10, Legal Services, Military Justice paras. 7-5, 7-6

---

[10] The ACCA made a factual finding that Judge Pritchard's decision to detail Judge Hynes "was in pursuit of a particular result on an anticipated issue in the case" and he "expected the replacement [military] judge would likely rule a certain way on an anticipated motion therein." *Davis*, 2024 CCA LEXIS 144, at \*13, \*15, 2024 WL 1652642, at \*6. However, this finding was based upon insufficiently supported inferences arising from the military judges' affidavits. *See United States v. Lewis*, 78 M.J. 447, 454 (C.A.A.F. 2019) (concluding that, "[i]n the absence of any such evidence, . . . the military judge's inference . . . was unreasonable and that his finding was clearly erroneous"). Thus, the ACCA's finding was clearly erroneous and we do not rely upon it in the course of this opinion.

(Nov. 20, 2020) (designating the responsibilities and detailing authority of chief circuit judges); *see also* R.C.M. 505(e)(1) (authorizing military judges to be changed before assembly "by an authority competent to detail the military judge," e.g., the chief circuit judge, "without cause shown on the record"). In order to fulfill this role, Judge Pritchard had the authority to reassign cases in his circuit even when he decided not to preside over Appellee's case personally.[11]

As can be seen then, Judge Pritchard was not disqualified, removed, or recused from Appellee's case. Accordingly, we deem it appropriate to analyze the legal issues presented here within the context of the conclusion that Judge Pritchard *reassigned* Appellee's case from himself to Judge Hynes. Importantly, however, for the reasons cited below we conclude that this reassignment was improper.

### 2. Improper Reassignment

In essence, Judge Pritchard reassigned Appellee's case because he did not want to favorably rule on a likely defense motion for a unanimous verdict. Such a ruling would have resulted in an ACCA stay of the proceedings and, consequently, a multi-month delay in the trial. Simply stated, this reasoning was fundamentally flawed. Concerns about court efficiency cannot arbitrarily trump a military

---

[11] Judge Pritchard reassigned Appellee's case to Judge Hynes on April 4, 2022. As noted above, Judge Hynes did not assemble Appellee's court-martial until after the forum selection, which occurred on May 23, 2022. *See United States v. Dixon*, 18 M.J. 310, 313 (C.M.A. 1984) (Reassignment of military judges prior to assembly "gives the needed flexibility for the timely assignment of military judges to facilitate the administration of military justice in a highly effective and efficient manner and yet avoid any unlawful interruption or interference with the trial proper." (internal quotation marks omitted) (quoting *Smith*, 3 M.J. at 492)); *cf.* Article 29(e), UCMJ, 10 U.S.C. § 829(e) (2018) (authorizing new military judge to be detailed after assembly "[i]f the military judge is unable to proceed with the trial because of disability or otherwise"); R.C.M. 505(e)(2) (2019 ed.).

judge's duty to protect the rights of an accused.[12] Judges have an obligation "to guard and enforce every right [of an accused] secured by [the] Constitution." *Smith v. O'Grady*, 312 U.S. 329, 331 (1941) (citation omitted) (internal quotation marks omitted). Moreover, we note that the Constitution "recognizes higher values than speed and efficiency." *Stanley v. Illinois*, 405 U.S. 645, 656 (1972). Here, Judge Pritchard placed undue emphasis on the efficiency of his circuit, improperly subordinating what he then believed to be Appellee's constitutional right to a unanimous verdict. Thus, his reason for reassigning the case was improper.

### 3. Judge Hynes's Impartiality

Appellee next argues that Judge Pritchard's replacement, Judge Hynes, was disqualified under R.C.M. 902 from presiding over this case. Appellee cites two reasons for this assertion: (1) Judge Hynes did not disclose to the parties the behind-the-scenes actions of Judge Pritchard regarding the reassignment of this case, thereby calling his own impartiality into question, and (2) Judge Hynes did not have an open mind on the defense motion for a unanimous verdict.

We reject Appellee's first disqualification rationale because there was no basis for Judge Hynes to believe that Judge Pritchard was acting in an inappropriate manner in this case, and thus Judge Hynes's nondisclosure does not demonstrate a lack of impartiality on his own part.

As for the second reason, the record does not reflect a sufficient basis to conclude that Judge Hynes sought to decide the issues presented to him in Appellee's case in anything other than a fair and open-minded manner. Although it is true that Judge Hynes's stated in an email to Judge Pritchard that he would "do [his] part to mitigate

---

[12] Of course, consistent with the UCMJ and the *Manual for Courts-Martial, United States*, military judges have the responsibility and authority to exercise reasonable control over court-martial proceedings. *See* R.C.M. 801(a)(3).

any potential case backlog while *U.S. v. Dial* was pending appeal," we do not ascribe to this comment the same nefarious meaning as Appellee now urges. Rather, Judge Hynes subsequently clarified that he simply meant that he was willing to assist on any pending cases if doing so would increase the efficiency of the 5th Judicial Circuit—not that he had a predetermined, inflexible intent to deny the unanimous verdict motion that was subsequently filed by Appellee.[13] As a result, Judge Hynes was not disqualified from handling Appellee's case.

### 4. No Structural Error

With these reassignment and impartiality issues resolved, we now turn to the central question in Certified Issue I: Did Judge Pritchard's reassignment of Appellee's case to Judge Hynes constitute structural error? We conclude that it did not.

To begin with, as indicated earlier we reject the argument that Judge Prichard's actions resulted in his disqualification, recusal, or removal from Appellee's case, and we reject the argument that Judge Hynes was biased against Appellee. Thus, in deciding whether there was structural error here, we do so by focusing on the fact that Judge Pritchard's reassignment to Judge Hynes was done for an improper purpose.

Next, we note that the Supreme Court has held that errors will be deemed "structural" in nature—thereby requiring no proof of prejudice—only in "a very limited class of cases." *Johnson v. United States*, 520 U.S. 461, 468 (1997); *see also United States v. Hasan*, 84 M.J. 181, 217 n.24 (C.A.A.F. 2024). Indeed, "[t]here is a strong presumption that an error is not structural." *United States v. Bartlett*, 66 M.J. 426, 430 (C.A.A.F. 2008). And the Supreme Court, the various federal circuit courts of

---

[13] For this reason, the ACCA's factual finding that Judge Hynes had "a predetermined intent to deny a likely motion in [Appellee's] case" was clearly erroneous, *Davis*, 2024 CCA LEXIS 144, at *13, 2024 WL 1652642, at *6, and we do not rely on it in the course of this opinion.

appeals, and this Court have never held that a trial judge's reassignment of a case for an improper purpose is part of this "limited class" of cases. *See McIntyre v. Williams*, 216 F.3d 1254, 1258, 1260 (11th Cir. 2000) (noting that no Supreme Court cases "indicate that the substitution of judges is a structural defect requiring automatic reversal" and holding state court's conclusion that "the substitution [of judges] is not a structural defect but rather a trial error subject to harmless error analysis" was not "an unreasonable application of clearly established Federal law as determined by the U.S. Supreme Court").[14]

In addition, the Supreme Court has made it clear that an error is structural only if it "affect[s] the entire conduct of the [proceeding] from beginning to end. . . . [and] render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Greer v. United States*, 593 U.S. 503, 513 (2021) (second alteration in original) (citations omitted) (internal quotation marks omitted). Because there is nothing in the record demonstrating that Appellee's trial before Judge Hynes was unfair or unreliable, Judge Pritchard's improper actions do not meet this standard. Therefore, "a structural error approach is [not] warranted under the circumstances" of Appellee's case. *Bartlett*, 66 M.J. at 430. Accordingly, we answer Certified Issue I in the affirmative and now turn to the question of prejudice raised by the second certified issue.

---

[14] The federal circuit courts test improper judicial substitutions for prejudice. *See, e.g.*, *United States v. Dhaliwal*, 464 F. App'x 498, 510 (6th Cir. 2012) (holding that even if a judicial "substitution was improper, [the appellant] is not entitled to a new trial unless he has been prejudiced by the substitution"); *United States v. Yellowbear*, 382 F. App'x 715, 720 n.1 (10th Cir. 2010) (holding that "any error resulting from the late unexplained substitution [of judges] would be harmless"); *United States v. Lane*, 708 F.2d 1394, 1396-98 (9th Cir. 1983) (holding that improper substitution of judges was not prejudicial).

### III. Certified Issue II: Prejudice

### A. Standard of Review

This Court reviews prejudice determinations de novo. *United States v. King*, 83 M.J. 115, 120 (C.A.A.F 2023).

### B. Discussion

Appellee argues that in the course of this Court conducting its prejudice analysis, he should receive the benefit of a significantly heightened constitutional standard of review whereby the Government has the burden of demonstrating that Judge Pritchard's legal error was harmless beyond a reasonable doubt. We disagree.

First, although it is true that a constitutional issue was the catalyst for Judge Pritchard's reassignment of Appellee's case, the constitutional right in question—unanimous verdicts in the military justice system—was actually nonexistent. Unless the Supreme Court holds to the contrary, an accused servicemember who is being court-martialed is not entitled to a unanimous guilty verdict in order to be convicted. *United States v. Anderson*, 83 M.J. 291, 293 (C.A.A.F. 2023), *cert. denied*, 144 S. Ct. 1003 (2024). And the mere invocation of a nonmeritorious constitutional right at the trial level does not entitle an accused to the heightened harmless beyond a reasonable doubt standard of review at the appellate level.

Second, Appellee argues that the harmless beyond a reasonable doubt standard applies because the actions of Judge Pritchard constituted a due process violation. Appellee cites *Williams v. Pennsylvania* for the proposition that a due process violation occurs in a case such as this one where the "likelihood of bias on the part of the judge is too high to be constitutionally tolerable." 579 U.S. 1, 4 (2016) (citation omitted) (internal quotation marks omitted). But here, we have concluded that there was no bias on the part of either Judge Pritchard or Judge Hynes.

Appellee further contends that a reassignment with the aim " 'to influence the outcome of the proceedings' " is a due process violation. Brief for Appellee at 9 (quoting *Cruz v.*

*Abbate*, 812 F.2d 571, 574 (9th Cir. 1987)). Although we agree that the reassignment was improper, we have concluded that this error did not constitute a violation of Appellee's due process rights because the record before us does not demonstrate that Judge Pritchard wanted to influence the outcome of any aspect of Appellee's case. *See supra* note 10.

At oral argument before this Court, Appellee's counsel stated without elaboration that Judge Hynes's denial of an expert in the field of alcohol intoxication, alcohol's effects on memory, and automatism was sufficient to undermine confidence that the trial was fair and that Judge Hynes was impartial. However, (1) the record indicates that when deciding this issue Judge Hynes considered the defense motion, the Government response, and the parties' arguments at an Article 39(a) session, so there were no obvious deficiencies in the manner in which he performed his judicial duties; (2) Appellee has not given us a sufficient reason to question the legal soundness of Judge Hynes's decision on the defense motion; and (3) the mere denial of a motion without more does not serve as a proper basis to conclude that Judge Hynes was biased against Appellee or that Appellee's trial was unfair. *Liteky v. United States*, 510 U.S. 540, 555 (1994) (articulating that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion").

Because we conclude that Judge Pritchard's improper reassignment of Appellee's case did not rise to the level of a constitutional violation, we must apply the Article 59(a), UCMJ,[15] standard of prejudice for nonconstitutional errors. *United States v. Diaz*, 69 M.J. 127, 137 (C.A.A.F. 2010) ("Nonconstitutional errors are reviewed for prejudice under Article 59(a), UCMJ . . . ."). Accordingly, we must determine whether "the error materially prejudice[d] the substantial rights of the accused." Article 59(a), UCMJ. Stated differently, "In the context of nonconstitutional errors, courts consider whether there is a *'reasonable*

---

[15] 10 U.S.C. § 859(a) (2018).

*probability* that, but for the error, the outcome of the proceedings *would have been different.'*" *United States v. Tovarchavez*, 78 M.J. 458, 462 n.5 (C.A.A.F 2019) (quoting *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016)).

Here, there is no basis to conclude that Appellee would have fared any better before Judge Pritchard, any other military judge, or a panel of members than he did before Judge Hynes. First, it is worth underscoring that at the bench trial, Judge Hynes acquitted Appellee of one of the two charges he was facing, and he adjudged the exact sentence that Appellee requested. Second, the mere fact that Appellee would have received a delay in his trial if, as anticipated, Judge Pritchard had ruled favorably on a motion for a unanimous verdict and the ACCA then had stayed that decision, is not sufficient to meet the Article 59(a) standard. To begin with, this chain of events is speculative. But more importantly, any benefit to Appellee that might have arisen from such a delay is impossible to qualify or quantify in any meaningful way. And third, although Appellee avers that if he had known that Judge Hynes took this case in order "to do [his] part" in addressing the circuit's backlog, he would not have consented to a military judge alone trial, Appellee completed his affidavit attesting to this fact before Judge Hynes's supplemental affidavit. Therefore, Appellee did not know all of the relevant circumstances at the time of his affidavit. Accordingly, we are left with nothing but speculation about what forum Appellee actually would have selected.

Despite the fact that Judge Pritchard erred when he reassigned Appellee's case to Judge Hynes, we conclude that there was no prejudicial effect arising from this reassignment because, in the final analysis, Appellee received a fair trial before an impartial military judge.[16]

---

[16] Appellee also asserts that "there is prejudice under *Liljeberg*." Brief for Appellee at 16. The *Liljeberg* analysis applies when there is a recusal or disqualification error. *See*

Accordingly, we answer Certified Issue II in the affirmative and hold that the ACCA erred in deciding that the reassignment of Appellee's case constituted structural error, or alternatively, that it resulted in prejudice.[17]

## IV. Judgment

We answer both certified issues in the affirmative. Therefore, we reverse the decision of the United States Army Court of Criminal Appeals. The case is returned to the Judge Advocate General of the Army for remand to the Court of Criminal Appeals for a further review under Article 66, UCMJ, 10 U.S.C. § 866 (2018), of the claims that were mooted by the lower court's prior decision to overturn the conviction.

---

*United States v. Armstrong*, 85 M.J. 31, 34 (C.A.A.F. 2024) ("If a military judge erroneously decided to not recuse because of an appearance of bias, this Court analyzes three factors established in the Supreme Court's decision in *Liljeberg* . . . to determine whether reversal is warranted."). Because we have concluded that the military judges were impartial in Appellee's case, there is no need to engage in a *Liljeberg* analysis.

[17] We recognize that our predecessor court stated that "the replacement of a military judge prior to assembly for improper motives. . . . would warrant severe remedial action." *Smith*, 3 M.J. at 492 n.5. However, we must account for Article 59(a) before taking remedial action, and because we find no prejudice, there is no basis for us to consider remedies.

Judge SPARKS, with whom Judge JOHNSON joins, concurring in part and dissenting in part.

I concur with the majority opinion as to the first certified question, but I dissent as to the second certified question. As an initial matter, I agree with the majority that Judge Pritchard's reasoning for transferring the case was fundamentally flawed, as concerns about court efficiency cannot arbitrarily trump a military judge's duty to protect the rights of an accused. My disagreement stems from the majority's holding that Judge Pritchard's action to transfer the case did not result in his disqualification but instead constituted an improper reassignment.[1]

It is true that Judge Pritchard had the authority to reassign cases in his circuit pursuant to Rule for Courts-Martial (R.C.M.) 505(e)(1) prior to assembly. Underlying this power and responsibility is that the reassignment will be done for a proper motive, which in some circumstances could be for judicial efficiency. In *United States v. Smith*, 3 M.J. 490, 492 n.5 (C.M.A. 1975), we cautioned, however, that there would be severe remedial action if a military judge was replaced prior to assembly for an improper motive. The majority opinion takes no such action despite correctly holding that Judge Pritchard's reason for reassigning the case was improper. Judge Pritchard's decision to focus on judicial efficiency instead of protecting Appellee's right to a unanimous verdict missed the forest for the trees and led to the appearance of his lack of impartiality.

"An accused has a constitutional right to an impartial judge." *United States v. Butcher*, 56 M.J. 87, 90 (C.A.A.F. 2001) (citations omitted) (internal quotation marks

---

[1] This distinction is important because this Court has adopted the prejudice standard the Supreme Court set forth in *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 864 (1988), for determining whether a military judge's failure to disqualify warrants a remedy to vindicate public confidence in the military justice system. *United States v. Martinez*, 70 M.J. 154, 158-59 (C.A.A.F. 2011). For an improper reassignment error, this Court does not apply the *Liljeberg* standard and instead applies the Article 59(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 859(a) (2018), standard of prejudice.

omitted). In furtherance of this right, the President promulgated R.C.M. 902, which provides the framework for when a military judge must be disqualified from participating in a court-martial. R.C.M. 902(a)-(b) establishes grounds for disqualification when a military judge is either actually biased or conflicted based on some specific grounds, or when the military judge appears to lack impartiality under all the facts and circumstances.

Here, the issue is Judge Pritchard's appearance of impartiality. "[A] military judge shall disqualify himself or herself in any proceeding in which that military judge's impartiality might reasonably be questioned." R.C.M. 902(a). To determine if a military judge should disqualify himself, "the test is whether, taken as a whole in the context of this trial, a court-martial's legality, fairness, and impartiality were put into doubt" by the military judge's actions. *United States v. Burton*, 52 M.J. 223, 226 (C.A.A.F. 2000) (citation omitted) (internal quotation marks omitted). When conducting this test, this Court applies an objective standard to identify "[a]ny conduct that would lead a reasonable [person] knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned." *United States v. Kincheloe*, 14 M.J. 40, 50 (C.M.A. 1982) (alterations in original) (citation omitted) (internal quotation marks omitted).

Judge Pritchard transferred Appellee's case to Judge Hynes because he did not want to favorably rule on a likely defense motion for a unanimous verdict. Such a ruling would have resulted in a stay of the proceedings and, consequently, a delay in the trial. Although judicial efficiency is not without importance, the Constitution, as the majority opinion notes, "recognizes higher values than speed and efficiency." *Stanley v. Illinois*, 405 U.S. 645, 656 (1972). A reasonable person knowing all the circumstances might reasonably question Judge Pritchard's impartiality by failing to protect what he believed was Appellee's right to a unanimous verdict for the sake of judicial efficiency. I agree with the majority that Judge Pritchard believed Appellee had a constitutional right to a unanimous verdict when he removed himself from the case. Although this Court subsequently held that an accused does not have a

constitutional right to a unanimous verdict, and the Supreme Court denied certiorari review of the issue, Judge Pritchard's motive was no less improper simply because his view of the law was later rejected. This decision warranted Judge Pritchard's disqualification, and he was therefore without proper authority to reassign the case to Judge Hynes. *See United States v. Witt*, 75 M.J. 380, 384 (C.A.A.F. 2016) ("Once disqualified, the judge is prohibited from further participation in the case.").

This Court has recognized that not every judicial disqualification error requires reversal and has adopted the standard the Supreme Court set forth in *Liljeberg* for determining whether a military judge's failure to disqualify warrants a remedy to vindicate public confidence in the military justice system. *Martinez*, 70 M.J. at 158-59. The *Liljeberg* factors are: "[1] the risk of injustice to the parties in the particular case, [2] the risk that the denial of relief will produce injustice in other cases, and [3] the risk of undermining the public's confidence in the judicial process." 486 U.S. at 864.

In this case, it is the third *Liljeberg* factor that is relevant to this inquiry. The risk of undermining the public's confidence in the military justice system is high when a military judge refuses to rule on a likely defense motion that he believed should be granted. Further, the lower court's factual finding regarding Judge Hynes further erodes public confidence in the miliary justice system. Here, the lower court interpreted Judge Hynes's statement that he volunteered to take the case, " 'to do my part to mitigate any potential case backlog while *Dial* was pending appeal,' " as a predetermined intent to deny a unanimous verdict motion filed in Appellee's case. *United States v. Davis*, No. ARMY 20220272, 2024 CCA LEXIS 144, at *13, 2024 WL 1652642, at *6 (A. Ct. Crim. App. Mar. 27, 2024) (unpublished).

This Court will not overturn a lower court's factual findings unless they are clearly erroneous or unsupported by the record. *United States v. Katso*, 74 M.J. 273, 279 (C.A.A.F. 2015). The majority opinion disagrees with the lower court's factual finding, choosing instead to credit Judge Hynes's subsequent explanation that he simply

meant that he was willing to assist on any pending cases if doing so would increase the efficiency of the 5th Judicial Circuit. While the majority's reading of Judge Hynes's statement is reasonable, I cannot say that the lower court's interpretation was clearly erroneous. The only way that Judge Pritchard's concern about the docket delay could have been alleviated was if Judge Hynes did his part to deny any unanimous verdict motion. Taken together, both military judges' actions could only create doubt in the public's mind as to the legitimacy of the military justice system. Accordingly, considering the unique facts of this case, I conclude that the risk of undermining the public's confidence in the military justice system warrants setting aside Appellee's convictions and sentence. I therefore must respectfully dissent from the majority's conclusion as to the second certified question.